UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF NORTH CAROLINA
DURHAM DIVISION

IN RE:                                    )
                                          )
Wendy Lucille Bradsher,                   )  Case No. 09-80942
                                          )
     Debtor.                              )

MEMORANDUM OPINION

Wells Fargo Bank, NA ("Wells Fargo") objects to confirmation of the Chapter 13 plan proposed by Wendy Lucille Bradsher (the "Debtor") on the ground that the Debtor is attempting to modify its secured claim in contravention of the anti-modification provision of section 1322(b)(2) of the Bankruptcy Code.  The Debtor asserts that she is entitled to modify the rights of Wells Fargo because the claim of Wells Fargo is not secured solely by a security interest in real property that is the Debtor's residence.  The Wells Fargo objection to confirmation came before the court on January 14, 2010.  After hearing arguments, the court took the matter under advisement.  For the reasons that follow, the court will overrule the objection of Wells Fargo.

FACTS

The Debtor's only residence consists of a mobile home that has been permanently attached to a parcel of real property located at 52 Apple Tree Lane, Roxboro, North Carolina.  This property is subject to a deed of trust held by Wells Fargo that secures an indebtedness in the original amount of $65,491.00. Under the terms of the deed of trust, the Debtor was to include in her monthly

payment principal and interest plus an additional sum to cover the payment of "Escrow Items" consisting of taxes and special assessments, leasehold payments or ground rents, and insurance premiums. Following the execution of the deed of trust, the Debtor made periodic payments of principal, interest, and escrow amounts. As a result of such payments, the portion of the funds that was included for taxes, insurance premiums, etc., at various times were held in escrow by Wells Fargo until disbursed by Wells Fargo to pay taxes, insurance and other items as they came due.

In her proposed plan, the Debtor valued her residence at $22,780.00 and proposes to modify Wells Fargo's secured claim by bifurcating the claim into a secured claim of $22,780.00 and an unsecured claim for the balance of the Wells Fargo indebtedness. Under the plan, the secured claim would be paid in full, with interest, while Wells Fargo would receive a zero dividend on its unsecured claim and be required to cancel its deed of trust upon completion of the plan. Wells Fargo asserts that this proposed treatment is precluded by section 1322(b)(2) of the Bankruptcy Code.

## ANALYSIS

In combination, sections 506(a) and 1322(b)(2) of the Bankruptcy Code provide a mechanism for modifying the rights of a holder of a secured claim by bifurcating the secured creditor's claim into secured and unsecured portions if the amount of the

claim exceeds the value of the collateral securing the claim. However, under section 1322(b)(2), some secured claims are protected against modification. Specifically, section 1322(b)(2) excludes from modification "a claim secured only by a security interest in real property that is the debtor's principal residence."

In the present case, the loan documents purport to provide a security interest for the indebtedness secured by the deed of trust in escrow funds in addition to a security interest in the residential land and housing structure. Here, the Wells Fargo loan documents do not simply provide for escrow payments for taxes and insurance and the establishment of an escrow account for such payments. Instead, the loan documents require the borrower to pledge the escrow funds as "additional security" for the principal and interest due under the promissory note and deed of trust. This court has ruled previously that a creditor whose loan documents provide for a security interest in an escrow account is not secured solely by "a security interest in real property that is the debtor's principal residence" within the meaning of section 1322(b)(2) and that such creditor is not entitled to invoke the anti-modification provision of section 1322(b)(2). In re Hughes, 333 B.R. 360 (Bankr. M.D.N.C. 2005).

The issue presented in this case is whether a different result now is required in light of the definitions of "debtor's principal

residence" in section 101(13A) and "incidental property" in section 101(27B) that were included in the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005. Under section 101(13A), "debtor's principal residence" means "a residential structure, including incidental property, without regard to whether that structure is attached to real property; and . . . includes an individual condominium or cooperative unit, a mobile or manufactured home, or trailer." Under section 101(27B), "incidental property" means "with respect to a debtor's principal residence . . . property commonly conveyed with a principal residence in the area where the real property is located; . . . all easements, rights, appurtenances, fixtures, rents, royalties, mineral rights, oil and gas rights or profits, water rights, escrow funds or insurance proceeds; and . . . all replacements or additions."

The United States Court of Appeals for the Fourth Circuit addressed the impact of the new definition of "debtor's principal residence" upon section 1322(b)(2) in In re Ennis, 558 F.3d 343 (4th Cir. 2009). In doing so, the court first observed that section 1322(b)(2) "has two distinct requirements: first, the security interest must be in real property, and second, the real property must be the debtor's principal residence." Id. at 346. The court ruled that the definition of "debtor's principal residence" contained in section 101(13A) addresses only the second requirement of section 1322(b)(2), leaving in place the requirement

that the security also must be in real property in order for the anti-modification exception of section 1322(b)(2) to be applicable. Id. According to the court, "the definition of 'debtor's principal residence' and the real property requirement in the anti-modification clause may each be given effect according to their plain language: 'property can be a debtor's principal residence even if it is personalty, but it cannot be subject to the [anti-] modification provision unless it is realty.'" Id. (quoting In re Harris, 376 B.R. at 320). Finally, the court ruled that state law is controlling in determining whether the property that is subject to a security interest is real property as required by the anti-modification provision of section 1322(b)(2). Id.

Wells Fargo is correct that when section 101(13A) and section 101(27B) are read together, escrow funds fall within the definition of a "debtor's principal residence." Section 101(13A) sweeps within the definition of a debtor's principal residence "incidental property" which section 101(27B) defines as including escrow funds. As the decision in Ennis makes clear, however, this alone does not mean that the anti-modification provision of section 1322(b)(2) is applicable. Under Ennis, that occurs only if escrow funds can be regarded as real property under applicable state law, i.e., North Carolina law.

The General Statutes of North Carolina contain a number of statutory definitions of real property. One of the oldest

definitions, dating back to 1883[1], is a part of the statutory construction statutes and is contained in N.C. Gen. Stat. § 12-3:

> In the construction of all statutes the following rules shall be observed, unless such construction would be inconsistent with the manifest intent of the General Assembly, or repugnant to the context of the same statute, that is to say:
>
> \* \* \*
>
> (6) "Person" and "Property" . . . The words "real property" shall be coextensive with lands, tenements and hereditaments. The words "personal property" shall include moneys, goods, chattels, choses in action and evidences of debt, including all things not descendable to heirs at law. The word "property" shall include all property, both real and personal.

As reflected in the following examples, some of the statutory definitions that have been adopted since N.C. Gen. Stat. § 12-3 was enacted have expanded that definition of real property. The definition under North Carolina's Housing Authorities Law as contained in N.C. Gen. Stat. § 157-3(16) provides:

> (16) "Real property" shall include lands, lands under water, structures, and any and all easements, franchises and incorporeal hereditaments and every estate and right therein, legal and equitable, including terms for years and liens by way of judgment, mortgage or otherwise.

N.C. Gen. Stat. § 160A-551(18), which is found in North Carolina's Parking Authority Law, provides that real property

---

[1] See Worth v. Knickerbocker Trust Co., 65 S.E. 918, 920 (N.C. 1909).

includes "easements, rights-of-way, uses, leases, licenses . . . and every estate, interest or right, legal or equitable, including terms of years, and liens thereon by way of judgments, mortgages or otherwise, and also includes claims for damages." N.C. Gen. Stat. § 105-273(13), which is part of the Machinery Act pertaining to taxation of property in North Carolina, defines real estate as including "all rights and privileges belonging or in any way appertaining to the property . . . ." N.C. Gen. Stat. § 47F-1-103(25), which is part of the North Carolina Planned Community Act, defines real property as including "other improvements and interests which by custom, usage, or law pass with a conveyance of land though not described in the contract of sale or instrument of conveyance." These statutes fairly reflect the breadth to which the definition of real property has been expanded in North Carolina.

The question that remains is whether escrow funds that were paid to Wells Fargo by the Debtor or the escrow account that was established by Wells Fargo upon receipt of such funds constitute real property as defined in North Carolina. The first step in addressing this issue involves an examination of the contractual provisions pertaining to the escrow funds and escrow account. These provisions are contained in paragraph 2 of the Wells Fargo deed of trust. The Debtor is required under these provisions to include in each monthly payment to Wells Fargo a sum for taxes and

any assessments against the property, any rents from the property, and the insurance on the property required under the deed of trust (referred to as items (a), (b) and (c) in the deed of trust). The deed of trust provides that "these items are called 'Escrow Items' and the sums paid to Lender are called 'Escrow Funds.'" Pursuant to the deed of trust, the Escrow Funds are to be held in an escrow account to be established by Wells Fargo pursuant to the Real Estate Settlement Procedures Act of 1974. The deed of trust authorizes Wells Fargo to collect and hold the amounts necessary to pay the Escrow Items. In addition to making such funds available for the payment of the Escrow Items by Wells Fargo, the deed of trust provides:

> The Escrow Funds are pledged as additional security for all sums secured by the Security Instrument. If Borrower tenders to Lender the full payment of all such sums, Borrower's account shall be credited with the balance remaining for all installment items (a), (b), and (c) and any mortgage insurance premium installment that Lender has not become obligated to pay to the Secretary, and Lender shall promptly refund any excess funds to Borrower. Immediately prior to a foreclosure sale of the Property or its acquisition by Lender, Borrower's account shall be credited with any balance remaining for all installments for items (a), (b), and (c).

Under the foregoing terms of the deed of trust, the Debtor obviously has enforceable rights regarding the Escrow Funds and escrow account. The Debtor has the right to insist that the funds be utilized to pay the Escrow Items specified in the deed of trust,

- 8 -

to receive any excess in the escrow account that accumulates during the term of the loan and to receive a refund of any balance in the escrow account upon the payoff of the loan. But, do such rights fall within the definition of real property? Although there apparently are no North Carolina cases that are dispositive of this question, this court believes that even under an expanded definition of real property, the North Carolina courts would answer this question in the negative.[2] The escrow provisions do not characterize or describe the rights arising from such provisions as being a component of the land described in the deed of trust or as constituting a right or privilege belonging or appertaining to such land. Nothing in the escrow provisions purports to engraft the escrow account onto the land so as to convert the escrow account into a tenement[3] or hereditament[4] that would be transferred to a grantee of the land. Nor was there any evidence of any custom or usage under which the escrow account would pass with a conveyance

---

[2] In the absence of controlling state law on an issue, the function of this court is to predict or anticipate how the Supreme Court of North Carolina would decide the issue. See McNair v. Lend Lease Trucks, Inc., 93 F.3d 325, 328 (4th Cir. 1996); In re Bower, 234 B.R. 109, 111 (Bankr. D. Nev. 1999); In re Johnson, 120 B.R. 461, 474-75 (Bankr. N.D. Ind. 1990).

[3] A tenement is an interest in land that is of a permanent nature. See 1 Webster's Real Estate Law in North Carolina § 1-5 (4th ed. (1994); 63C Am Jur 2d Property § 13 (2009).

[4] In the context of land, an incorporeal hereditament is a right growing out of, or concerning, or annexed to land, but not the land itself. See Pottle v. Link, 654 S.E.2d 64, 67 (N.C. App. 2007).

- 9 -

of the land. In actuality, the contractual rights possessed by the Debtor can best be described as a chose in action[5] which, under N.C. Gen. Stat. § 12-3(6), constitutes personal property. This means that the Wells Fargo indebtedness is not secured solely by real estate that is the Debtor's principal residence and thus Wells Fargo is outside the protection from modification provided under section 1322(b)(2).

## CONCLUSION

Based upon the foregoing, the court concludes that Wells Fargo's objection should be overruled to the extent that it is based upon the anti-modification clause contained in section 1322(b)(2). Wells Fargo also objected to the Debtor's $22,780.00 valuation of her residence. By agreement of the parties, this objection was not addressed at the hearing on January 14, 2010, with the understanding that a further hearing would be held if Wells Fargo's anti-modification objection was overruled. Accordingly, an additional hearing shall be held to afford the parties an opportunity to present evidence and arguments regarding the valuation issue. At the conclusion of the additional hearing, the court will make a final ruling on whether the Debtor's plan can be confirmed.

---

[5] "The term 'chose in action' is comprehensive, and includes the infinite variety of contracts, covenants, and promises that confer one party the right to recover a personal chattel or a sum of money from another by an action." 63C Am Jur 2d Property § 23 (2009).

A separate order consistent herewith is being entered pursuant to Fed. R. Bankr. P. 9021.

This 16th day of February, 2010.

_____
WILLIAM L. STOCKS
United States Bankruptcy Judge

PARTIES IN INTEREST

Edward C. Boltz, Esq.
6616-203 Six Forks Road
Raleigh, NC 27615

Sean M. Corcoran, Esq.
5121 Parkway Plaza Drive, Suite 300
Charlotte, NC 28217

Richard M. Hutson, II, Trustee